IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS A. VELEZ CARABALLO, | : | CIVIL ACTION NO. **3:CV-04-1871** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383 (c). The

Plaintiff, Luis A. Velez Caraballo, is seeking review of the decision of the Commissioner of Social

Security ("Commissioner") which denied his claims for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act

(Act), 42 U.S.C. §§ 401-433, 1381-1383(f).

## I.  PROCEDURAL HISTORY.

The Plaintiff filed applications for DIB and SSI on June 8, 1999, alleging an inability to

work since March 12, 1999, due to "back pain-disc" and depression. (R. 170, 183).[1]  His claim was

denied, and a timely request for a hearing was filed.   A hearing was conducted before an

Administrative Law Judge ("ALJ") on September 20, 2000.  Plaintiff was denied benefits pursuant

to the ALJ's decision of October 24, 2000. (R. 100-111).

---

[1]Plaintiff claimed that he could not bend, lift or twist.  (R. 183).

The Plaintiff requested review of the ALJ's decision by the Appeals Council. Said request for review was granted, and the case was remanded to the ALJ on September 27, 2001. (R. 138-141). The ALJ held two supplemental hearings. On November 7, 2002, the ALJ issued a decision finding that Plaintiff was not disabled under the Act.[2] The Plaintiff requested review of the ALJ's decision by the Appeals Council. Said request for review was denied on June 25, 2004 (R. 7-10), thereby making the ALJ's decision the "final decision" of the Commissioner. 42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 13 & 14).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[2]There is no dispute that the Plaintiff meets the nondisability requirements for DIB benefits and is insured for benefits through the date of the ALJ's second decision, November 7, 2002. (R. 27). The record reveals that Plaintiff had past work experience to provide insured status. (R. 1173-177). We also note that the Plaintiff's date last insured is June, 2004. (R. 177).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity." *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or

combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 28-29).  In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date. (R. 27, ¶ 2).  Further, the ALJ determined that the medical evidence establishes that Plaintiff's degenerative disc disease, depression and anxiety are severe impairments within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 21).

The ALJ noted that Plaintiff's allegations regarding his limitations are not totally credible. (R. 28, ¶ 5).  When assessing his residual functional capacity, the ALJ found that Plaintiff retains the

residual functional capacity to perform a significant range of light work. (R. 28, ¶'s 7, 12, 13). Specifically, the ALJ found Plaintiff had the following RFC:

> The claimant has the following residual functional capacity: he can perform light work that is routine, repetitive, and unskilled in nature, requiring no ability to communicate in the English language, requiring no math skills in excess of the ability to perform simple addition, subtraction, that does not require repetitive pushing or pulling or repetitive use of foot controls, that does not involve concentrated exposure to vibration, that requires no driving, allows for a sit/stand option, requires no crouching or crawling, no more than occasional kneeling, stooping or climbing stairs, and that can be performed by someone who needs a cane for ambulation.

(*Id.*, ¶ 7. ).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, that he was a younger person under the Regulations, and that he was unable to communicate in English. (R. 28, ¶'s 8-10). Thus, the ALJ found that the Plaintiff met his burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f), 416.920(f). The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy. *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428. In making

a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on the testimony of an impartial vocational expert, the ALJ concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity ("RFC"), he is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 27).  Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as a small products assembler, production inspector, or conveyor line bakery worker.  (R. 27).  Thus, Plaintiff was found to be not disabled.  (R. 16-17, 18).

The relevant time period for this case is March 12, 1999 (alleged onset date of disability) (R. 183), through November 7, 2002 (date of ALJ's decision).  (R. 19-29).

## IV.  DISCUSSION.

This appeal involves the denial of Plaintiff's applications for DIB and SSI.  Plaintiff first filed applications for DIB and SSI in June, 1999, which were denied in October, 2000, by the decision of an ALJ.  The case was then remanded for further consideration, and the Plaintiff 's claims were denied again in November, 2002.  The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.

While the ALJ found that the Plaintiff had  severe impairments, namely, degenerative disc disease, depression and anxiety (R. 21), she determined that the impairments did not meet or medically equal a listed impairment.  (R. 21).  The Plaintiff contends that the ALJ failed to give proper weight to the opinions of his treating physicians, that the ALJ improperly gave more weight to the consultative doctor, and that the ALJ failed to consider his physical and mental impairments

in combination.  (Doc. 13, pp. 11, 19).  The Plaintiff also argues that the ALJ erroneously found that he was not fully credible and that he was not compliant with his treatment recommendations. Finally, Plaintiff claims that the ALJ's hypothetical question to the Vocational Expert did not include all of his impairments.  (*Id*. ,p. 11).

### A. Background

The Plaintiff was born on March  1, 1966. (R. 1 70).  He was 36 years old at the time of the supplemental hearings before the ALJ in 2002.  (R. 20).  Thus, Plaintiff is a younger individual under the Regulations.  *See* 20 C.F.R. § 404.1563(c).  He has a ninth grade education and he cannot speak or understand English. (R. 20).  Transferability of skills from his past relevant work is not an issue due to his RFC. (R. 28, ¶ 11).  The Plaintiff has not been engaged in substantial gainful activity since his alleged onset date of March, 1999. (R. 27, ¶ 2).  The ALJ found that the Plaintiff could not perform any of his past relevant work. (R. 28, ¶ 8).  The Plaintiff alleges that he is unable to work because of back pain and depression.  The ALJ found that the Plaintiff had impairments which were severe.  However, the ALJ also found that the Plaintiff retained the residual functional capacity to engage in a significant range of light work activity. (*Id*. at ¶ 12).[3]  Finding that a

---

[3]      (b) *Light work.*   Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and puling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.   20 C.F.R. §404.1567 (b).

significant number of such jobs exist in the national economy based on the testimony of a vocational expert at the hearing, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 29).

### B. Medical Evidence

On appeal, Plaintiff makes the general assertion that the ALJ erred in finding that he could perform light work because the decision is not supported by substantial evidence. More specifically, the Plaintiff contends that the ALJ did not give proper weight to the opinions of his treating physicians, his own subjective complaints of pain, and his testimony regarding his inability to perform substantial gainful activity. The Plaintiff further claims that the ALJ did not include all of his impairments in her hypothetical question to the VE.

The medical evidence reveals that Plaintiff has a herniated disc at L4-5 and has depression. (R. 218, 304, 308, 314, 369, 417). Plaintiff also suffers from chronic low back pain. (R. 315). Plaintiff further has lumbar disc disease. (R. 408). In February, 2002, Dr. Thomas opined on a welfare form that Plaintiff was permanently disabled due to low back pain, herniated disc at L4-L5, and depression. (R. 410).

Plaintiff was not willing to consider any more epidural steroid injections (he already received three injections R. 70) or surgery for his back condition. (R. 70-71, 408). At the hearing, Plaintiff testified that he goes grocery shopping with his family, dusts a little, watches TV, sits in his yard and can drive for 10 minute intervals twice a day. He also visits with family and friends and, occasionally rides in a car on trips to Rochester, New York. (R. 63-64, 70-73, 86).

### C. Vocational Expert.

Plaintiff has a ninth grade education (R. 42-43). He has not worked since March, 1999, and cannot perform his past work. He cannot communicate in English.

A vocational expert testified at the administrative hearing. (R. 42-43). The vocational expert testified that an individual of Plaintiff's age, education, and experience with the Plaintiff's limitations could perform light work as a small products assembler, production inspector and conveyor line bakery worker which existed in significant numbers in the national economy. (R. 42-43).

The ALJ found that, with respect to Plaintiff's physical impairment, degenerative disc disease, depression and anxiety, there was no evidence that they met or equaled any listed impairment. (R. 21). Thus, the ALJ found that Plaintiff was able to perform a significant range of light work. (R. 28, ¶ 12). We agree that this finding was supported by substantial evidence in light of the medical record as discussed by the ALJ. (R. 22-25).

### D. Analysis

Plaintiff requests that the decision of the Commissioner denying SSI and DIB benefits be reversed because the ALJ failed to give appropriate weight to the opinions of his attending physicians, citing *Mason v. Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993). (Doc. 13, p. 16). The Plaintiff also claims that the ALJ's findings that he was not fully credible and that he was not compliant with the recommended treatment were erroneous. Further, the Plaintiff argues that the hypothetical question to the VE did not include all of his impairments and that the ALJ's decision at Step 5 is not supported by substantial evidence

Specifically, Plaintiff argues that the ALJ's finding that he had degenerative disc disease as opposed to herniated disc at L4-L5 was not consistent with the determinations of his treating doctors. While the ALJ found that Plaintiff has severe degenerative disc disease (R. 21), she also stated on two occasions that Plaintiff's March 1999 MRI showed a large disc protrusion at L4/5. (R. 23). Indeed, Plaintiff's doctor, Dr. Thomas, indicated that Plaintiff had "L4-L5 large disc protrusion." (R. 288). The ALJ also noted that the MRI showed no gross nerve root compression and that Plaintiff was diagnosed with spinal stenosis. The ALJ further indicated that notwithstanding the spinal stenosis, Plaintiff had +4/5 motor strength and no atrophy. (R. 23-24).

The Plaintiff also contends that the ALJ did not give proper weight to the opinions of his doctors that he was disabled and their opinions regarding his RFC. The Plaintiff claims that the ALJ improperly gave more weight to the opinion of the consultative doctor than to his treating doctors.

The ALJ found that Plaintiff did have severe impairments based on the requirements set forth at 20 C.F.R. §§ 404.1520(b) and 416.920(b). (R. 27, ¶ 3). However, she also found that such impairments did not render the Plaintiff disabled. (R. 28, ¶ 4). The existence of a medical condition does not demonstrate a disability for purposes of the Act. Thus, the issue was not whether Plaintiff suffered from a medical condition, but whether that condition results in a functional disability that prevents Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). As discussed in detail by the ALJ, the medical evidence supported her finding that the Plaintiff was not disabled.

The ALJ gave significant weight to the State Agency RFC assessment finding that Plaintiff had the physical ability to perform light work (R. 230-237) since it was consistent with the objective

evidence and with Dr. Bree's RFC assessment.  (R. 25).  While the ALJ gave appropriate weight to Dr. Sullivan's opinion that Plaintiff was temporarily disabled, the ALJ only gave little weight to the doctor's July 19, 1999, opinion that Plaintiff was disabled into the future through May 2, 2000, since it was inconsistent with later evidence.  (R. 25, 418).  It is clear that the ALJ did not adopt Dr. Sullivan's July 19, 1999, opinion, as the Defendant notes.  (Doc. 14, p. 13, n. 4).  We disagree with Plaintiff that the ALJ accepted Dr. Sullivan's July 19, 1999, opinion.  The ALJ clearly stated that she gave little weight to Dr. Sullivan's July 19, 1999, opinion since it was not consistent with later medical evidence.  (R. 25).   The record also supports the ALJ's conclusion that the July, 1999, opinion was contrary to subsequent medical evidence, as Defendant points out.  (*Id.*, p. 13).  (R. 218, 251, 261, 271).

The ALJ also explained as to why she gave little weight to the assessments of Dr. Thomas and gave significant weight to the assessment of Dr. Bree.  (R. 25).  The ALJ indicated that Dr. Bree's area of expertise was "orthopaedics" and that Dr. Thomas was a family practitioner.  Thus, the ALJ concluded that Dr. Bree was more qualified as to assessing Plaintiff's back condition and the degree of his functional limitations.  (R. 25).  While the Plaintiff correctly notes that Dr. Bree was an expert in rehabilitative medicine and not orthopedics (Doc. 13, p. 20), we agree with the Defendant (Doc.14, pp. 13-14) that it is more significant that  the objective medical evidence as discussed by the ALJ did not show that Plaintiff was totally disabled from performing all work activities.  (R. 25, 289, 309, 315, 318, 427).

The ALJ further stated that Dr. Thomas' opinion was in large part based on the Plaintiff's subjective complaints, which the ALJ did not find were fully credible.  (R. 25).  We also concur with

the Defendant that Plaintiff's daily activities were not consistent with the opinions of Dr. Thomas and Dr. Sullivan.  (Doc. 14, pp. 14-15).   We have detailed some of Plaintiff's activities above, including his ability to occasionally travel to Rochester, New York.   We also note, as Defendant points out, that Plaintiff admitted to walking around town, doing chores such as cleaning and doing laundry, riding his bike, reading, watching TV, listening to music, visiting his pastor, going to flea markets and applying for jobs. (R. 440-441).  Plaintiff also stated that he takes his wife to her doctor appointments and, importantly, that he feels better when he is out of his house.   While Dr. Bree found that Plaintiff had no limitations on lifting and carrying, the ALJ found that Plaintiff was only able to perform light work.  (R. 355).  Thus, the ALJ found that Plaintiff's RFC was  more restrictive than Dr. Bree found, but she also found that it was more expansive than Dr. Thomas found.  The ALJ's RFC finding was also supported by the assessment of the state agency doctor.  (R. 230-237). The ALJ gave this RFC Assessment significant weight since it was supported by the medical evidence. (R. 25).   We find substantial evidence support the ALJ's RFC findings, especially in light of the broad range of daily activities which Plaintiff admitted to performing.

The Administrative Law Judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d).   Although she must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the Administrative Law Judge] will give that opinion.  20 C.F.R. § 404.1527(d)(3).  While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion.  20 C.F.R. § 404.1527(d).  Automatic adoption of the

opinion of the treating physician is not required.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The ALJ considered Dr. Sullivan's disability assessment and found that the July 19, 1999, assessment projecting disability into the future was not consistent the medical records, as discussed above.  Further, it is the ALJ's determination as to whether the Plaintiff is disabled, and not Dr. Sullivan's.  *Adorno. v. Shalala,* 40 F. 3d 43 (3d Cir. 1994).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of  *Morales v. Apfel*, 225 F.3d 310  (3rd Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)]  (*quoting  Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987));  *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994);  *Jones,* 954 F.2d at 128;  *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);  *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988);  *Brewster,* 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(I). Additionally, the nature and extent of the treatment relationship is considered. The Regulations state: "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(ii). Additionally,

as the Defendant recognizes, the arbiter in charge of making an ultimate determination of disability is the Commissioner, not a medical source. 20 C.F.R. §§ 404.1527 (e). (Doc. 14, p.12).

Plaintiff argues that the ALJ erred by failing to give sufficient weight to the opinions of Dr. Sullivan and Dr. Thomas, his treating doctors. The record indicates that the ALJ did thoroughly consider these opinions. (R. 25). The ALJ also gave consideration to Dr. Thomas's functional limitations which were supported by the record when she limited Plaintiff's RFC to jobs which do not require repetitive pushing or pulling or use of foot controls, allow for a sit/stand option, and require no concentrated exposure to vibration. (R. 28, 289-290).

The ALJ also properly determined the Plaintiff's RFC. (R. 25-26). Residual functional capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F. 3d at 121. (Citations omitted). In this case, the ALJ determined that, despite his severe physical back impairments, the Plaintiff did have the RFC to perform a significant range of light work. (R. 28).

The Court in *Burnett*, 220 F. 3d at 121, stated that the ALJ must consider all evidence before her in making a RFC determination. The *Burnett* Court further stated that, while the ALJ is permitted to weigh the credibility of the evidence, she is required to give some indication of the evidence which she rejects, as well as the reasons for discounting the evidence. *Id*. Thus, the ALJ must mention and refute some of the contradictory medical evidence before him. *Id*. *See also Adorno v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994). We find that, in this case, the ALJ considered all of the medical evidence before her, and she mentioned and refuted some of the contradictory evidence, such as Dr. Sullivan's and Dr. Thomas's opinions. (R. 25).

As discussed, the ALJ found that the Plaintiff had physical impairments (degenerative disc disease at L4-L5 level), which were severe, but that they were not severe enough to meet or equal any listed impairment.  (R. 21, 23-24).  Plaintiff alleges that the ALJ erred by not giving proper weight to the opinions of doctors  with respect his back disorder and that the ALJ erred by not giving full credibility to his testimony.

Upon review, we find that the ALJ stated the reasons in her decision with respect to the finding regarding Plaintiff's back condition, by discussing the medical evidence and explaining her reasoning.  (R. 23-25).  It is clear that the Third Circuit requires the ALJ to identify the relevant listed impairments and to provide an explanation of reasoning for a finding that a claimant does not meet or equal a listed impairment.  *See Burnett*, 220 F. 3d at 120.  We agree with the Defendant that the ALJ has fully explained her reasoning as to why the Plaintiff's physical impairment did not meet or equal any of the musculoskeletal listings, specifically listing 1.04 (disorders of the spine).

The ALJ identified the relevant listed physical impairment by stating that she gave consideration to Section 1.04.  (R. 23).  The ALJ also gave a  thorough explanation as to why she found the Plaintiff's physical impairment did not meet or equal listing 1.04 and properly considered all of Plaintiff's symptoms, the objective medical evidence and medical opinions.  (R. 23-25).  The ALJ also discussed the Plaintiff's  RFC as a result of his physical impairment, as required by 20 C.F.R. § 404.1520.  (R. 25-27).  The Plaintiff's degree of functional abilities as a result of his physical impairments was also discussed by the ALJ.  (*Id*.).

16

The Plaintiff also argues that the ALJ failed to consider Plaintiff's impairments in combination by not recognizing that his back pain exacerbates his depression.

Plaintiff alleges that the ALJ erred in failing to consider all of his (Plaintiff's) impairments in combination.  Specifically, Social Security ruling 85-28 mandates that the ALJ must consider the possibility that several impairments, which have no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, could, in combination, produce a severe impairment.  Thus, even when an impairment is not severe, the ALJ must assess "the impact of the combination of those impairments on the person's ability to function," rather than assess separately the contribution of each impairment standing alone.  *See* 20 C.F.R. 404.1523.  In this case, the ALJ stated that Plaintiff has depression as well as anxiety, and that they were severe (R. 21), but she found that Plaintiff's medications keep his symptoms under good control.  (R. 22, 23, 24).  The ALJ considered the effects of Plaintiff's medication on treating his depression  (R. 22).  The ALJ also considered how Plaintiff related his depression to his back condition, but she still found Plaintiff's testimony not to be fully credible "regarding the extent or severity of his pain and  limitations."  (R. 24).

An ALJ must give weight to a claimant's subjective testimony of his inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence. *Schaudeck v. Commissioner of Social Security*, 181 F. 3d 429, 433 (3d Cir. 1999). The ALJ found that the medical evidence presented supports a reasonable conclusion that Plaintiff's impairments can cause pains and limitations, but not to the extent alleged by the claimant. (R. 24-25).  In making her credibility determination, the ALJ considered the Plaintiff's medical records as

well as his activities of daily living.  (R. 24-25).  There was substantial evidence to support the ALJ's

credibility finding, especially in light of the Plaintiff's admitted activities of of walking around town,

going to flea markets, riding his bike, visiting friends, doing chores, reading, watching TV and

listening to music.

Plaintiff also argues that, in her credibility determination, the ALJ ignored the findings of

his treating doctors which found that his subjective complaints were consistent with his conditions.

(Doc. 13, p. 24).  The Plaintiff also states that the ALJ's credibility findings about him were not

supported by the opinions of his treating doctors, Dr. Monteforte and Dr. Thomas, and thus were

not supported by substantial evidence.  (*Id*.).  Defendant states that the ALJ correctly considered all

of the evidence in making her credibility finding.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th

Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991)

('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess

witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000). "The ALJ must

indicate in his decision which evidence he has rejected and which he is relying on as the basis for

his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find

testimony to be not credible, but he must "give great weight to a claimant's subjective testimony

of the inability to perform even light or sedentary work when this testimony is supported by

competent medical evidence." *Id*.

The ALJ found that the Plaintiff was not fully credible.  (R. 24).  The ALJ accurately discussed the Plaintiff's testimony and his daily activities stated in his testimony and in the medical records. (R. 22, 24-25).  In the record, as the ALJ found, Plaintiff stated that he did some household chores, that he visits friends, rides his bike, walks, goes to the flea market and takes his wife to the doctor.  (R. 22).   The ALJ found that the record as a whole, including the Plaintiff's daily activities, did not fully support Plaintiff's testimony regarding the extent of his disability. (R. 25).  The ALJ considered all of the treatments which Plaintiff received and the medications and their effects on Plaintiff.   (R. 23-25).

The ALJ did limit Plaintiff's RFC to work that would allow him to alternate between sitting and standing, that does not require repetitive pushing or pulling or use of foot controls, that does not involve exposure to vibration, that requires no crouching or crawling and occasional kneeling, stooping and climbing, and that can be performed by someone who needs a cane to ambulate. (R. 25-26).  These functional limitations, which were supported by the medical evidence discussed above, were also included in the hypothetical question to the VE.  (R. 42).  The Plaintiff himself stated that he watches TV, he is able to take care of his hygiene, helps with dusting, goes grocery shopping, helps with the laundry, sits outside in the yard but changes positions, and takes Ibuprofen and Propoxyphene for pain. (R. 62- 66). Plaintiff also stated that he drives, 10 miles twice a day, occasionally takes car trips (as a passenger) to Rochester, New York, and uses a cane to walk when his back bothers him.   (R. 38-39, 73).

The Plaintiff asserts that the ALJ erred by finding that he was not compliant with his medical treatment and that this fact undercut his credibility.   The ALJ also found that the Plaintiff's daily living activities and the medical records undercut his credibility as to the extent of his limitations and symptoms.  (R. 24).   The Plaintiff's daily activities can provide evidence of his symptoms and their effects on his ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ properly considered the Plaintiff's activities of daily living.  The ALJ stated that Plaintiff only attended physical therapy briefly in December, 2000, and that he was non-compliant with a home exercise program.  (R. 24).  The Defendant cites to the record, which supports the ALJ's conclusion that Plaintiff was not fully compliant with his treatment recommendations.  (Doc. 14, p. 18).  We have reviewed the record referenced by Defendant and agree with Defendant.  (R. 218, 258, 306, 309, 318-319, 441, 313).

In the June 21, 2000, Psychological Evaluation of Plaintiff, Dr. Greenstein indicated as follows:

> It is not clear whether Luis is compliant with his medical
> regime which would include the proper taking of
> anti-depressant medications and performance of physical
> therapy exercises to strengthen his back. He did admit that
> the does not always do his exercises which were shown to
> him n physical therapy, and his alcohol intake would lead one
> to believe that he is not taking his anti-depressant
> medication as he should.  One wonders why he begins
> drinking at noon to quell feelings of anxiety and restlessness
> which should be taken care of by his Paxil and Buspar
> medications.  If Luis is going to benefit from any job
> training or placement it would be to his benefit to obtain
> better pain management guidelines and supervision.  His
> prescribing doctor certainly needs to be informed about
> the extent of Luis' alcohol dependence, and it is not clear

whether Luis himself would have actually provided the full
depth of this information.

(R. 313).

The ALJ had a basis in fact to find that Plaintiff was not fully complaint with his treatment

recommendations.  Thus, the ALJ clearly articulated her reasoning for finding that the Plaintiff's

subjective complaints of pain were not fully credible, and this determination is supported by

substantial evidence.

The Plaintiff argues that the ALJ erroneously discredited the opinion of Dr. Geocadin

regarding the severity of his depression.  Dr. Geocadin, a psychiatrist, treated Plaintiff from July,

2001, through January, 2002.  (R. 430-434).  On July 12, 2001, Dr. Geocadin found that Plaintiff

had a GAF of 45.  (R. 434).[4]  On September 11, 2002, Dr. Geocadin noted that Plaintiff's GAF was

30, but indicated that Plaintiff ran out of his medication for one month.  (R. 444).  The ALJ fully

discussed Plaintiff's treatment for depression and anxiety and found these non-exertional

impairments to be severe.  (R. 21-22).  The ALJ also noted the records of Dr. Geocadin.  (R. 22).

However, the ALJ determined that Plaintiff experienced improvement with his medications, and

she noted the fact that in April, 2002, his therapist found that he had nothing further to gain from

further therapy sessions.  (*Id*.).  The ALJ then considered Plaintiff's depression under Listings 12.04

---

[4]A Global Assessment of Functioning ("GAF") score of 45 indicates:

**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent
shoplifting) **OR any serious impairments in social, occupational, or school functioning** (e.g.,
few friends, conflicts with peers or co-workers.)

*Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994) ("DSM-IV").
(Emphasis in original).

and 12.06.  She found that Plaintiff did not meet the B or C criteria.  (R. 22).  The Plaintiff does not

cite to any records showing that he meets these criteria.  The notes of Ms. Goldenberg in February,

2002, and April, 2002, indicate that Plaintiff was able to maintain his sobriety, and that he enjoyed

getting out of the house by going to flea markets and visiting friends and relatives.  They also show

that Plaintiff applied for jobs and that he was getting along OK with his wife.  (R. 436-437).  These

records, together with Plaintiff's daily activities, support the ALJ's finding that Plaintiff's severe

depression did not meet or equal any Listing.  There was also substantial evidence to support the

ALJ's conclusion that Plaintiff's medications kept his symptoms from depression under good control.

(R. 24).

Finally, Plaintiff contends that the ALJ's hypothetical question to the VE did not include

all of his limitations.  Specifically, Plaintiff asserts that the hypothetical question did not address his

chronic pain and muscle spasms, his need for strong pain killers that could make him drowsy and

affect his concentration, his fatigue, and his need to lie down during the day.  (R. 13, pp. 24-25).[5]

Plaintiff also argues that the hypothetical question did not include Dr. Thomas' restrictions and did

not include any limitations with respect to his Purdue Pegboard test, which showed that he was in

the lowest 20% of assembly skills.

The ALJ considered the sit/stand work option, which was consistent with Plaintiff's

testimony and Dr. Thomas' findings, and included as limitations no repetitive pushing or pulling or

---

[5]Drowsiness and other side effects of medications cannot be viewed as disabling unless the record provides medical evidence of serious functional limitations. *Burns v. Barnhart,* 312 F. 3d 113, 131 (3d Cir. 2002).

using foot controls.  Additionally, Plaintiff was limited to performing routine, repetitive, unskilled work which took into account his diminished assembly skills.

The ALJ also included vibration limitations (R. 42-43), and found that Plaintiff was limited to occasional kneeling, stooping, climbing, crouching and crawling.  These limitations were included in the jobs identified by the vocational expert which a  person with Plaintiff's background and limitations could perform.   (R. 42-43).   The jobs did not require driving, and they could be performed by someone who needed a cane to ambulate.  The medical records do not fully support the Plaintiff's testimony and the restrictions found by Dr. Thomas, as the ALJ found.  Moreover, the ALJ's  finding that the Plaintiff was limited to light exertional level recognized all of Plaintiff's limitations which were supported by the record.  As stated above, the Plaintiff's antidepressant medication keeps his depression in good control.

Finally, the medically supported restrictions of the Plaintiff were included in the hypothetical question that the ALJ posed to the vocational expert.   The ALJ found that the Plaintiff had various limitations that were the result of his severe back condition and mental impairments.  She posed a hypothetical question to the vocational expert which reflected all of the Plaintiff's impairments that were supported by the medical and other evidence of record. *See Chrupcala v. Heckler*, 829 F.2d 1269 (3rd Cir. 1987).  The vocational expert testified that there were a significant number of jobs which existed in the national economy that were within the Plaintiff's limitations.  (R. 42-43).  Accordingly, the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence and should not be disturbed.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be denied.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 11, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS A. VELEZ CARABALLO, | : | CIVIL ACTION NO. **3:CV-04-1871** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 11, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis

25

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 11, 2005**