IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS A. VELEZ-CARABALLO, | |
| Plaintiff, | |
| | CIVIL ACTION NO. 3:04-1871 |
| vs. | |
| | (JUDGE NEALON) |
| JO ANNE B. BARNHART, | (MAGISTRATE JUDGE BLEWITT) |
| Commissioner of Social Security, | |
| Defendant | |

## MEMORANDUM and ORDER

This is a Social Security/Disability matter which comes before the Court on the Plaintiff's appeal, pursuant to 42 U.S.C. § 405(g), from the denial of disability insurance benefits and supplemental security income by the Defendant, Commissioner of Social Security.[1] (Doc. 1). The matter was referred to United States Magistrate Judge Thomas M. Blewitt for initial consideration. On July 11, 2005, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Plaintiff's appeal be denied. (Doc. 16). The Plaintiff filed Objections to the Report and Recommendation and a supporting brief on July 28, 2005, to which the Government filed a reply on August 10, 2005. (Docs. 17-19). The matter is ripe for

---

[1] See 42 U.S.C. §§ 401-433 and 42 U.S.C. § §1381-1383(f).

disposition and, for the reasons that follow, the Report and Recommendation will be adopted and the appeal will be denied.

## I. Standard of Review

Pursuant to the Federal Magistrates Act, when objections to a report and recommendation have been filed, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C). This matter will be reviewed de novo as to those portions of the Report and Recommendation to which objections were filed.

## II. Procedural Background

The Plaintiff, Luis A. Velez-Caraballo, filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 8, 1999, alleging an inability to work since March 12, 1999, due to back pain and depression. (R. 20). His request for benefits was denied at the initial level on October 24, 2000. After a request for review was granted, the matter was remanded to the Administrative Law Judge ("ALJ") for further consideration pursuant to an

Order of the Appeals Council dated September 27, 2001. Hearings were held on July 20, 2002 and October 1, 2002, which resulted in a decision, unfavorable to the Plaintiff, being issued on November 2, 2002. (R. 14). The Plaintiff then requested review by the Appeals Council which, by Notice of Action dated June 25, 2004, declined review of that decision, making the decision of the ALJ the final decision of the Commissioner of Social Security. (R. 7-10). This appeal followed on August 23, 2004. (Doc. 1). On December 29, 2004, the Plaintiff filed a brief in support of his appeal wherein he argued that the ALJ failed to give adequate consideration to the opinions of the treating physicians, and relied instead upon the opinions of consulting physicians. (Doc. 13). He further contended not only that the ALJ erroneously concluded that Plaintiff was non-compliant with his treatment recommendations, but also disputed the ALJ's credibility determination that found Plaintiff to be not entirely credible. He maintained, moreover, that the ALJ's hypothetical questions to the Vocational Expert ("VE") failed to include all of Plaintiff's impairments. As previously noted, the Government filed an opposing brief on January 14, 2005. (Doc. 14), and the Magistrate Judge issued a Report and Recommendation on July 11, 2005, recommending that the appeal be denied. (Doc. 16). Timely objections, and a response thereto, followed. (Docs. 17-19).

### III. Disability Determination Process

The Social Security Regulations establish a five-step evaluation process which is used to determine if a person is entitled to disability benefits. *See* 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a Plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: 1) Is the individual engaging in substantial gainful activity? 2) Does the individual have a severe impairment? 3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, *appendix* 1? 4) Does the individual retain the residual functional capacity to engage in his/her past relevant work? and 5) If an individual does not have the capacity to engage in his/her past work, does s/he retain the capacity to perform jobs which exist in significant numbers in the national economy? *See* Social Security Ruling 86-8; 20 C.F.R. §404.1520.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v.*

*Shalala,* 993 F.2d 1058, 1064 (3d Cir.1993).

In the present case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and also found that while he had some impairments that were severe, these impairments did not meet, or medically equal, any listed impairments. (R. 28). She further determined that, although Plaintiff is unable to perform any of his past relevant work, he retained the residual functional capacity ("RFC") to perform light work, with restrictions, and that there are a significant number of jobs in the national economy that Plaintiff could perform. (Id.). Consequently, the ALJ concluded that he was not disabled. (Id.).

## IV. Discussion

The role of this court in reviewing a decision by the Commissioner of Social Security to deny disability benefits is to "determine whether there is substantial evidence to support the Commissioner's decision." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004)(*citing Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . It is less than a preponderance of the evidence but more than a mere scintilla." *Id.* (internal quotations and citations omitted). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)(cited in *Richardson v. Perales, supra*). "Substantial evidence had been . . . defined as 'enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *NLRB v. Columbian Enameling & stamping Co.*, 306 U.S. 292, 300 (1939)," *Olsen v. Schweiker*, 703 F.2d 751, 753 (3rd Cir. 1983). Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart, supra*, 364 F.3d at 503.

In the Report and Recommendation, the Magistrate Judge found that there was substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Regulations. The Magistrate Judge determined that the ALJ properly weighed the opinions of Plaintiff's treating physicians with other expert medical opinions and evidence. Further, Magistrate Judge Blewitt concluded that the ALJ appropriately evaluated Plaintiff's credibility regarding his subjective complaints which, in some instances, were inconsistent with the evidence of record. He also found that there was substantial evidence in the record to support the ALJ's finding that Plaintiff had a Residual Functional Capacity ("RFC") to perform a significant range of light work.

6

The Plaintiff presents the following grounds as objections to the Report and Recommendation:

1. The Magistrate Judge wrongly determined that the ALJ properly weighed the opinions of Plaintiff's treating physicians.

2. The Magistrate Judge erred in accepting the ALJ's RFC, which contained no limitations on Plaintiff's depression or his score on the Purdue Pegboard Test.

3. The Magistrate Judge erred in upholding the ALJ's credibility determination.

(Doc. 17). Each of these will be addressed *in seriatim*.

*I. Assigning Weight to the Various Medical Reports*

Plaintiff first asserts that the ALJ did not give appropriate weight to the medical reports and opinions of his treating physicians, Drs. Craig Sullivan, Madhavi Monteforte and Tracy Thomas, and that he erred in affording more weight to the opinions of non-treating agency physicians. Although the treating physicians, Drs. Sullivan and Thomas, found Plaintiff to be disabled, both the ALJ and the Magistrate Judge remarked that, not only is such a determination reserved exclusively to the ALJ, but also that Dr. Sullivan's treatment records reveal a more positive picture of Plaintiff's health, noting his conditions were under control in many instances and that Plaintiff condition was normal on several occasions. Additionally, where such conclusions fail to address Plaintiff's disability from a functional standpoint, the

opinions are entitled to little weight. Therefore, Dr. Sullivan's finding in July, 1999, that Plaintiff would be disabled through May, 2000, a conclusion subsequently contradicted by substantial evidence, was properly weighed by the ALJ.

The ALJ afforded more weight to the opinions of Dr. Stanton Bree, a consultive orthopedist who evaluated Plaintiff, inasmuch as he determined the objective evidence was consistent with Dr. Bree's assessment. Dr. Bree further concluded there was evidence of symptom magnification, finding positive straight leg raise but positive Waddell's signs as well. In his decision, while affording proper weight to Plaintiff's IQ assessment, the ALJ was entitled to give less weight to Dr. Allen Greenstein's findings relating to Plaintiff's back condition, finding it outside his expertise of psychology. Likewise, it was not improper for the ALJ to give less weight to Dr. Thomas' assessments since he believed they appeared to carry little objectivity, and were based largely on subjective complaints by Plaintiff.

Additionally, Plaintiff's counsel makes a strenuous commentary concerning Plaintiff's back condition and whether degenerative disc disease or nerve root compression is present. However, the court is not the fact-finder–its role is to determine whether there is substantial evidence in the record to support the ALJ's decision. The ALJ relied on the express medical opinion of Dr. Gerard A. Waggenspack, who specifically concluded there was "no gross nerve root

compression" evidenced by the MRI. (R. 217). Further, inasmuch as the ALJ concluded that Plaintiff suffered, *inter alia*, degenerative disc disease, it is not inconsistent with the findings made by Dr. Monteforte, a pain management physician, who noted that his subjective complaints of pain were consistent with a herniated disc, but also found that his strength and reflexes were normal, and recommended an orthopedic consultation.

Finally, it appears clear that the ALJ also evaluated Plaintiff's condition under section 1.04 of the Regulations listed impairments and concluded that it did not meet or medically equal a listed impairment nor was it "disabling." (R. 23-24). While there was conflicting evidence as to the radicular distribution of Plaintiff's back impairments, there exists substantial evidence to support the ALJ's conclusion that such pain was not sufficiently established. The ALJ observed that Dr. Bruce Sicilia noted normal strength and reflexes, and failed to find a radicular component to his pain.

Because there is objective medical evidence of record demonstrating that Plaintiff's impairments do not impede his functioning and appear to be manageable, there is substantial evidence to support the ALJ's analysis of the various medical opinions and the weight afforded to each.

## *II. Plaintiff's RFC*

Plaintiff next maintains that the ALJ failed to consider his depression and Purdue Pegboard scores in determining his RFC. It is clear from the ALJ's decision, however, that Plaintiff's depression was not overlooked. Rather, the ALJ determined, based on the medical evidence including, *inter alia*, Plaintiff's testimony and the medical evidence from Drs. Greestein and Efigenia Geocadin that, while Plaintiff suffered from depression during part of the time period being considered for disability, it was nonetheless well-controlled by medication and, while it was "severe" within the meaning of the Regulations, Plaintiff failed to meet the criteria necessary under sections 12.04 and 12.06 of the Regulations for this condition to be considered disabling. Specifically, the ALJ found that while Plaintiff demonstrated signs and symptoms of depression under section "A," he failed to meet or medically equal the criteria of sections "B" or "C." (R. 22). The record established that he was unrestricted "in activities of daily living, mild limitations in social functioning and mild to moderate limitations in concentration, persistence and pace and no repeated episodes of decompensation." (*Id.*). Furthermore, the medical records indicated that his periods of depression appeared intermittently, at times when Plaintiff was not using medication, which would support a finding that his depression cannot be considered "disabling" under the Regulations. Thus, there is substantial evidence to

support this conclusion.  As noted above, his daily activities did not appear to be limited by his depressive state and, when using medication, the condition appeared to be well-managed.

Moreover, while the Purdue Pegboard test issued by Dr. Greenstein showed some difficulty in hand manipulation skills, there is no other evidence, medical or vocational, to establish Plaintiff suffered upper limb or dexterity impairment.  Consequently, the ALJ was not required to include reference to Plaintiff's Purdue Pegboard results in posing hypothetical questions to the Vocational Expert.

Although there were subjective complaints of pain, there was also contradictory objective evidence, such as a March, 2002 stress test which showed no back pain. (*Id.* At 25).  While his past relevant work, which was described as heavy exertional, was precluded, given his limitations the ALJ limited the range of light work Plaintiff was capable of performing to a significant, rather than a full, amount.  Having an RFC with the ability to perform a significant range of light work is a classification that encompasses all of Plaintiff's impairments that are supported by the objective evidence of record.  The Vocational Expert ("VE") testified that jobs such as small products assembler, production inspector and conveyor line bakery worker exist in significant numbers in the local, state and national economies.  These positions take into consideration the Plaintiff's RFC as determined by the ALJ.

11

Finding that there is substantial evidence to support the ALJ's determination as to Plaintiff's RFC, the Plaintiff's argument to the contrary will be rejected.

### III. Credibility Determination

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §404.1529. First, symptoms, such as pain, shortness or breath, fatigue, *et cetera*, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §404.1529(b). In

so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding his or her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p.

In her report, the ALJ found that Plaintiff "is not fully credible regarding his symptoms and limitations." (R.25). In affirming this conclusion, the Report and Recommendation noted that the ALJ compared Plaintiff's subjective claims with the objective medical evidence, thus performing a proper credibility determination. Plaintiff asserts that the ALJ's credibility determination was wrongly based on incorrect medical conclusions and that findings of Plaintiff's non-compliance were excusable. While he claimed he to have suffered from depression, both the ALJ and the Magistrate Judge noted that the medical records indicated that it was well-

controlled with medication. Moreover, although he alleged severe back pain that required assistance while walking, the objective evidence of record, including his testimony as to his daily activities, the treatment he pursued for this impairment, and other medical evidence, discloses a more positive picture of his condition. For instance, Plaintiff claimed he was able to take care of chores, visit with family, his pastor and neighbors, go to flea markets, visit relatives out of town and apply for jobs. The ALJ neither rejected Plaintiff's testimony nor the existence of impairments, but found the severity of them, and their resulting limitations, to be overstated. Given this framework, it is concluded that the credibility analysis of Plaintiff was proper, in evaluating whether his subjective complaints were reasonably consistent with the objective medical evidence. In applying this standard, the ALJ rejected the degree to which the subjective complaints were not supported by the record as a whole. Consequently, this assessment is supported by substantial evidence and will not be disturbed on appeal.

## V. Conclusion

The court finds the recommendations of the Magistrate Judge well reasoned and legally sound and supported by substantial evidence. Consequently, after careful review and in the exercise of sound judicial discretion, the court will adopt the Magistrate's Report and Recommendation in full and deny Plaintiff's appeal. An

appropriate order is attached.


Date: September 22 , 2005                    s/ William J. Nealon
                                             United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LUIS A. VELEZ-CARABALLO, :
:
    Plaintiff, :
: **CIVIL ACTION NO. 3:04-1841**
vs. :
: (JUDGE NEALON)
JO ANNE B. BARNHART, : (MAGISTRATE JUDGE BLEWITT)
Commissioner of Social Security, :
:
    Defendant :

## ORDER

ACCORDINGLY, this 22nd day of SEPTEMBER, 2005, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge Blewitt (Doc. 16) is ADOPTED;

2. The Plaintiff's appeal is **DENIED**.

3. The Clerk of Court is directed to close the case.

                                s/ William J. Nealon
                                United States District Judge